IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NADINE LEE,<br>    Plaintiff,<br><br>    v.<br><br>RICKY L. CLARK, JR., individually and in his official capacity as City Manager for the City of Jonesboro; WILFRED NORWOOD, individually and in his official capacity as Interim Chief of Police for the City of Jonesboro; and THE CITY OF JONESBORO, GEORGIA,<br>    Defendants. | Civil Action File<br><br>No.: _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Nadine Lee (hereinafter "Plaintiff"), and hereby shows as follows:

1. This is a complaint for retaliation in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), as temporarily modified pursuant to the Families First Coronavirus Response Act ("FFCRA"), Public Law 116-127.

### I.    THE PARTIES

1

2. Plaintiff is a natural person and is now and was at all times relevant to this action a citizen of the United States entitled to bring lawsuits of this type and nature. Plaintiff is now and was at all times relevant to this action a resident of the State of Georgia. Plaintiff submits to the jurisdiction of this Court.

3. Plaintiff was formerly employed as a Probation Officer with the City of Jonesboro. She was terminated by Defendant Ricky Clark on July 20, 2020.

4. Defendant Ricky L. Clark, Jr. ("Clark"), is a natural person and resident of the State of Georgia. Clark is subject to the personal jurisdiction of this Court.

5. Clark is the City Manager for the City of Jonesboro, Georgia. In this position, Clark had the authority to discipline Plaintiff up to and including termination of her employment. Clark can be served with a copy of the summons and complaint at 124 North Avenue, Jonesboro, Georgia 30236.

6. Defendant Wilfred Norwood ("Norwood") is a natural person and resident of the State of Georgia. Norwood is subject to the personal jurisdiction of this Court.

7. Norwood was the Interim Chief of Police for the City of Jonesboro, Georgia. In this position, Norwood had the authority to discipline Plaintiff up to and including termination of her employment.

8. Defendant City of Jonesboro, Georgia (the "City") is a municipality located in Clayton County, Georgia and was Plaintiff's employer until her termination on July 20, 2020. The City can be served with a copy of the summons and complaint by personal service of its Mayor, Joy Day, at 129 North Avenue, Jonesboro, Georgia 30236. Fed. R. Civ. P. 4(j)(2)(A).

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

10. Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391(b) because the events giving rise to this Complaint occurred in this District.

## III. FACTUAL ALLEGATIONS

11. Plaintiff was employed by the City of Jonesboro as a Probation Officer from 2013 to July 20, 2020.

12. Plaintiff's final hourly rate was $17.60 and she worked 40 hours per week.

13. Plaintiff had been employed by the City of Jonesboro for over 30 days and worked full time, in excess of 1,250 hours per year.

14. Plaintiff is the single mother of a minor child.

15. Plaintiff learned on Thursday, July 2, 2020, that she and her child had been exposed to COVID-19 through her babysitter. She was on vacation at the

time, but informed her supervisor immediately upon learning of the exposure.

16. Plaintiff was taking vacation days on July 2 and 3, 2020, and did not report to work, and instead used her accrued paid time off, as was planned before she learned of her exposure.

17. Plaintiff contacted her supervisor again on Monday, July 6, 2020, reminding her supervisor that she had been exposed to COVID-19 less than 14 days prior and was taking "Public Health Leave" in accordance with Defendant's employee policies.

18. Plaintiff secured a doctor's appointment as soon as possible, and on July 10, 2020, received a doctor's note instructing Plaintiff to quarantine until Monday, July 23, 2020.

19. Plaintiff submitted a photo of this doctor's note to her supervisor that same day.

20. Also on that day, the City Manager, in his official capacity, contacted Plaintiff and instructed her to submit a request for leave and to send the aforementioned doctor's note to him directly.

21. On Sunday, July 12, 2020, Plaintiff submitted that request and associated documentation.

22. On Wednesday, July 15, 2020, the City Manager, in his official capacity, sent a memorandum to Plaintiff, Plaintiff's personnel file, the Mayor, the Chief of Police, and Plaintiff's supervisor, in which he told Plaintiff that she was set to use the last of her Public Health Leave on Friday, July 17, 2020, and that she would be expected back in the office on Monday, July 20, 2020.

23. During the period of July 2 – July 15, Plaintiff had been without a babysitter due to her babysitter having contracted COVID-19 and needing to recover.

24. During the period of July 2 – July 15, Plaintiff had unsuccessfully attempted to find alternate childcare for her return to work on July 20. She received responses from babysitters who she solicited saying that they either were not accepting new clients at all due to the ongoing pandemic, or would not accept her child due to the child's recent exposure to COVID-19.

25. On July 16, 2020, Plaintiff responded to the City Manager saying that she could not return on July 20, 2020, because child care was unavailable for reasons related to COVID-19, and that she would like to use FMLA leave until she could secure childcare.

26. That same day, the City Manager responded that "FMLA is for personal medical needs or to care for a family member dealing with medical issues. I do not see FMAL [sic] as an option for having no available childcare." (Memorandum attached hereto as "Exhibit A")

27. The same response memorandum from the City Manager reiterated that "If you fail to return to work on Monday, July 20, 2020 and/or submit necessary doctor notices, as per Section D: (Abandonment) of our Personal Policies and Procedures, failure to report to work without valid reason and without prior authorization for two (2) consecutive work days may result in separating an employee from the payroll and reporting the employee as having abandoned their position."

28. Defendant Clark did not consult with an expert on the FMLA before informing Plaintiff that her FMLA request was denied.

29. Having been told that her leave request was denied and that she would be terminated for failure to report to work, Plaintiff submitted a letter of resignation on Monday, July 20, 2020, to avoid having a termination for cause on her record.

30. Plaintiff has sought alternate employment of similar character to her work as a Probation Officer for the City of Jonesboro since July 20, 2020, but has been unsuccessful. She has been unemployed without unemployment insurance assistance for fifty-four (54) weeks as of Monday, August 2, 2021.

31. Plaintiff's final hourly rate while working for Defendant was $17.60, and she worked 40 hours per week: Monday to Friday, 8am – 5pm, with a one-hour lunch break.

32. Plaintiff never received disciplinary action from Defendant before July, 2020.

## IV. COUNT I

## FMLA INTERFERENCE

## (AGAINST ALL DEFENDANTS)

33. Plaintiffs incorporate by reference paragraphs 1 - 32 above as if set out fully herein.

34. Enacted on March 18, 2020, the FFCRA amends the FMLA by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for parents of children who are unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency." See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F).

35. The FMLA, as amended by the FFCRA, provides employees to the right to take necessary medical leave for, among other things, the unavailability of childcare due to COVID-19, at 2/3 the employee's regular rate of pay.

36. An employee returning from FMLA/FFCRA paid sick leave or family leave has the right to be restored to the same or an equivalent position under the FMLA. See 29 C.F.R. § 826.30(a).

37. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.

38. The City of Jonesboro is an employer as defined by the FMLA, 29 U.S.C. § 2611(4).

39. Plaintiff was an eligible employee within the meaning of the FMLA at all times relevant to this Complaint.

40. Defendant Jonesboro was a covered employer within the meaning of the FMLA at all times relevant to this Complaint.

41. At the time of the incidents relevant to this Complaint, Plaintiff was employed by Jonesboro in Clayton County, Georgia.

42. At all times material hereto, Clark and Norwood exercised operational control over the work activities of Plaintiff.

43. At all times material hereto, Clark and Norwood participated in the day-to-day operation of the Jonesville Police Department.

44. At all times material hereto, Jonesboro vested Clark and Norwood with supervisory authority over Plaintiff.

45. At all times material hereto, Clark and Norwood exercised supervisory authority over Plaintiff.
46. At all times material hereto, Clark and Norwood had authority to adjust, change or modify Plaintiff's work schedule.
47. At all times material hereto, Clark and Norwood had authority to adjust, change or modify Plaintiff's compensation.
48. At all times material hereto, Clark and Norwood had authority to discipline Wittenberg, including authority to terminate her employment.
49. At all times material hereto, Clark and Norwood were Plaintiff's "employers" within the meaning of the FMLA.
50. On July 16, 2020, Plaintiff made a request for FMLA leave because her child was without childcare due to COVID-19. She used the phrase "FMLA leave" explicitly in her request.
51. On that exact same day, July 16, 2020, the City Manager responded in a memorandum that "FMLA is for personal medical needs or to care for a family member dealing with medical issues. I do not see FMAL [sic] as an option for having no available childcare."
52. Individuals who need to take FMLA leave due to unavailability of childcare due to COVID-19 are entitled to up to 12 weeks of leave, the first two are

unpaid (unless the employee elects to use any accrued paid leave) and the remaining ten are paid at 2/3 of the employee's normal salary or hourly rate.

53. The City Manager for Defendant denied Plaintiff's explicit FMLA request and, in the same memorandum, stated that failure to return to work would result in termination for "abandonment."

54. Having been informed by the highest-ranking official in Defendant's employment hierarchy that her request for FMLA leave due to the unavailability of childcare due to COVID-19 was denied and that termination was imminent, Plaintiff submitted a notice of resignation on the first day that the City Manager indicated would have been counted as an unexcused absence.

55. The Defendants violated the FMLA by denying Plaintiff's request for protected leave and stating that failure to report to work would be counted as "abandonment."

56. Defendants interfered with, restrained, and denied Plaintiff's exercise of her rights under the FMLA by refusing her request for protected leave and refusing to reinstate her to her full-time position or a reasonably equivalent full-time position at the end of her protected leave.

57. Defendants failed to consult with an expert on the FMLA or to do research into the FMLA before denying Plaintiff's request for leave.

58. Defendants acted in bad faith by failing to investigate whether childcare was covered by the FMLA.

59. Defendant knew or should have known that childcare unavailability due to COVID-19 was a valid reason for requesting protected leave.

60. Defendants' unlawful conduct caused Plaintiff to suffer lost wages and benefits, reduced future wages, and lost opportunities for advancement.

61. Defendants are liable to Plaintiff for lost back pay and benefits, reinstatement or lost front pay, liquidated damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

A. Back pay equal to the amount of wages Plaintiff would have received from July 20, 2020, to the date of judgment, along with other lost benefits such as insurance, paid time off, and retirement contributions;

B. Either (1) reinstatement if feasible under the circumstances; or (2) if reinstatement is not feasible, front pay, along with other lost benefits, for a reasonable period of time for Plaintiff to acquire comparable subsequent employment;

C. Reasonable attorney's fees and costs in this action as allowed by statute;

11

D. Liquidated damages in this action as allowed by statute;

E. Pre- and Post-judgment interest at the maximum rates allowable by law; and

F. Additional relief as the Court deems proper and just.

Respectfully submitted this 17th day of September, 2021.

ATTORNEY FOR PLAINTIFF

/s/ *Oscar E. Prioleau, Jr.*
Oscar E. Prioleau, Jr., Esq.
Georgia Bar No. 588510
Andrew C. Salman
Georgia Bar No. 515006
Prioleau & Milfort, LLC
3800 Camp Creek Pkwy
Building 1800, Suite 124
Atlanta, GA 30331
(404) 526 – 9400 (telephone)
(404) 920 – 3330 (facsimile)
andrew@pmlawteam.com